PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 1:14CR0157 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| MICHAEL J. KISLING, | ) | |
| | ) | |
| Defendant. | ) | **SENTENCING MEMORANDUM** |

**I. Background**

From his attic apartment in the Northern District of Ohio, while posing as a teenaged girl online, Defendant, Michael Kisling, befriended a 14 year-old girl living in Wisconsin, and enticed her to send him sexually explicit nude photographs of herself, after telling her how to pose for and take the photos of her breasts, buttocks and vagina. Defendant, a 21 year-old male, showed his gratitude by hacking into the 14 year-old's Facebook account and posting her sexually explicit nude photographs for all to see.

When the victim's mother attempted to intercede, Defendant threatened the mother by, rather remarkably, threatening to sue her because he had "some very powerful friends in high places," revealing "AND BTW, I NO WHERE YOU LIVE NOW" [sic], and taunting ". . . if I find out for one moment I might get in trouble for this I have the skill to release those photos of your daughter to 75% of the internet . . . SO LEAVE ME THE F**K ALONE OR ELSE." As if

(1:14CR0157)

those bone rattling threats were not enough, he added, "... btw I've posted those pics in a lot of porn sites so HA!"

After a period of unexplained and false calm, almost two and one-half years later, Defendant started up again. This time, he posted the sexually explicit nude photographs on a Facebook page he created using the stolen identification of the victim's high-school aged brother. When caught, Defendant admitted his goal was to portray the victim as a "slut."

An examination by a forensic psychologist confirmed that Defendant is a pedophile who may have a mild mood disorder and has some features of Attention-Deficit/Hyperactivity Disorder ("ADHD"). That examination also confirmed that Defendant did not suffer from a mental disease or defect which rendered him unable to understand the nature and consequences of the criminal proceedings against him or to assist properly in his defense. In sum, Defendant was competent to stand trial or otherwise answer the charges against him.

Defendant pleaded guilty to the six charges brought against him by federal indictment. All but one charge--Count 3, identity theft--demands a mandatory minimum term of incarceration. Count 1 charged production of child pornography and demands a mandatory minimum of 15 years. The remaining counts, including those for distribution, possession and receipt of child pornography, require a minimum of 5 years of incarceration. Lifetime supervision is permitted.

Because Defendant not only induced the production of the sexually explicit nude images made by the 14 year-old victim which he distributed *via* computer, he also received and possessed 149 videos and 40 photographs of child pornography, his advisory guidelines

(1:14CR0157)

calculation, therefore, included references to both U.S.S.G. § 2G2.1 (production) and U.S.S.G. § 2G2.2 (trafficking, possession), in addition to U.S.S.G. § 2B1.1(a)(2), for identity theft.

At some point after the date for submitting objections to the presentence investigation reports had passed, counsel for the government submitted objections.[1]  Because one objection mirrored that made by Defendant and was sustained, the Court focuses on the government's second objection—that the report failed to include a two-level enhancement for sexual contact by use of a foreign object or device, pursuant to U.S.S.G. § 2G2.1(b)(2)(A), referencing 18 U.S.C. § 2246(3).[2]  Relying substantially on the 2012 Sentencing Commission report to Congress that raised policy concerns about the application of the child pornography guidelines,[3] Defendant objected to the application of enhancements Defendant labeled, "outdated and disproportionate." ECF No. 48 at PageID #: 232-33 (citing p. 321 of the 2012 Sentencing Commission report).

---

[1] Defense counsel complained that the government's objection was not timely, but declined the Court's offer to continue the sentencing to allow him more time to respond to the objection.  The Court found the procedural error, the untimely submission of the objection, especially in light of the declination of an opportunity to continue the hearing and the unlikelihood that a continuance would have improved Defendant's arguments, to be insufficient grounds to sustain the objection.

[2] Section 2246(3) defines "sexual contact" as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks, of any person with intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."

[3] *See* "Federal Child Pornography Offenses," United States Sentencing Commission, available at: http://www.ussc.gov/news/congressional-testimony-and-reports/sex-offense-topics/report-congress-federal-child-pornography-offenses

3

(1:14CR0157)

Defendant also objects to the inclusion of the two-level increase for sexual contact by use of a foreign object or device advocated for by the government.

## II.  Reasoning

The Court supplements its statements made on the record during Defendant's sentencing hearing with the following.

### A.

While the Sentencing Commission's 2012 report to Congress evinces some dissatisfaction with the guidelines for non-production offenses, adherence to those sections, under the right circumstances, does not, as Defendant argues, result in either "acknowledgment [ ] that the guidelines and the outdated child pornography enhancements should be followed . . . [or] changed."  ECF No. 48 at PageID #: 238.  Rather, there is gray area that Defendant overlooks.  The advisory guidelines are advisory and capable of being adjusted, as needed, to fit the nature and circumstances of the offenses charged, history and characteristics of the defendant and the need for the sentence imposed.  In this case, the Court imposed a fair, sufficient not greater than necessary *within guidelines* sentence that includes the application of enhancements for  use of a computer, § 2G2.2(b)(6), and for the number of child related pornographic images involved,§ 2G2.2(b)(7), –both of which Defendant suggests are outdated and are disproportionally applied.   Before addressing those objections, the Court reviews the enhancement resulting from the victim's induced self-masturbatory conduct or sexual contact by use of a foreign object or device.

(1:14CR0157)

**B.**

Defendant objects[4] to the increase of two levels caused by an image that depicts the 14 year-old inserting what appears to be a writing implement like a slim "magic marker" into her vagina; another image shows her with that same implement in her mouth.  The government believes the image of the girl with the implement vaginally inserted was intended, by Defendant who directed the poses, "to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person, " justifying the enhancement pursuant to § 2G2.1(b)(2)(A).  Having viewed the images, the Court agrees.

When considering the image with the device inserted into the girl's vagina in context with the other images, it is patent that the girl inserted a phallic symbol into her vagina and placed that same item into her mouth.  The symbolism is unmistakably sexual.  The contact between genitalia and the writing implement is irrefutable.  And, even if one could equivocate about the purpose of the first morose gesture, when one considers the image of the same phallus in her mouth and the girl's expression, there can be no reasonable conclusion drawn other than that sexual contact had occurred and was intended to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.  *See also United States v. Shafer*, 573 F.3d 267, 273-74 (6th Cir. 2009) (finding self-masturbation by victim for the defendant's gratification constituted sexual contact).  Therefore, Defendant's objection was overruled.

---

[4] The Government objected to the exclusion of this enhancement; Defendant objected to its inclusion.  Because the Court included the enhancement in the final guidelines calculation, the above review is made from the Defendant's perspective.

(1:14CR0157)

### C.

Next, Defendant objects that the enhancements for his use of a computer to commit both the production and non-production offenses, to wit: §§ 2G2.1(b)(6)(B)(ii) (production) and 2G2.2(b)(7) (trafficking, possession), are outdated and disproportionately applied. ECF No. 48 *passim*. Defendant is mistaken.

The application of the use of computer enhancement for the production of the images could not be more apt than as applied in this case. It's textbook. How else could a socially awkward male living in an attic in the Northern District of Ohio have (1) contacted a 14 year-old in Wisconsin; (2) tricked her into thinking he was a *she* of similar age; (3) enticed her to photograph herself while striking lascivious poses; and (4) convinced her to send him the photographs? Without the use of a computer, this scheme would have failed at many corners. The Court finds not only that Defendant's use of a computer made possible the production and transmission of the sexually explicit images, the Court also finds that *but for his use of a computer*, the heinous offenses involving the 14-year old victim in this case would not have occurred. Defendant's objection is overruled.

Regarding the use of computer enhancement as applied to Count 6–the receipt of 149 pornographic videos and 40 photographs containing real minors engaged in sexually explicit conduct--also found on Defendant's computer, the Sentencing Commission acknowledged that an enhancement for use of a computer would frequently occur in "trafficking cases" and set the base offense level at 22 preparatory to the increase for the use of a computer enhancement which would occur in "almost every case." ECF No. 49 at PageID #: 248-49 (citing Commission's

6

(1:14CR0157)

App. C, Amendment 664). See also United States v. Cunningham, 669 F.3d 723, 732-33 (6th Cir. 2012) (rejecting Defendant's argument that the frequency with which the enhancements apply renders them invalid). Following that same reasoning, the Commission anticipated that the guidelines calculation for most defendants would reach or exceed the 60-month mandatory minimum for those offenses. ECF No. 49 at PageID #: 249 (citing Commission's App. C, Amendment 664).

To avoid the imposition of overly severe sentences when § 2G2.2 is referenced, the Commission encourages courts to consider the content of the defendant's child pornography collection, the degree of his involvement in a child pornography community, and any history of sexually abusive, exploitive or predatory behavior, in addition to the pornography offense.[5] The Court considered these factors during Defendant's sentencing and agreed that there was not much interaction with others in the child pornography community. Defendant's collection was, however, rich in child pornographic content which included images of females as young as 4 years old, bondage and violence. Defendant also showcased his sexually abusive, exploitative and predatory tendencies by placing the 14 year-old's sexually explicit photographs on her own Facebook page; he also victimized her brother whom Defendant impersonated in a most embarrassingly sexual and predatory way that suggested the brother had a prurient interest in his own sister; and, finally, Defendant terrorized the mother by cursing her and lobbing threats to harm her and release the sexually explicit photographs of her daughter to "75% of the internet [if the mother did not] LEAVE [him] THE F**K ALONE . . ." Consideration of the factors

---

[5] Pp. 320-321 of Report to Congress.

7

(1:14CR0157)

suggested by the Commission bolsters the application of the enhancement for Defendant's use of computer for the non-production or trafficking offense. Defendant's objection is overruled.

**D.**

Defendant also objects that the five-level enhancement due to the number of child pornography images possessed is outdated and disproportionately applied. Defendant received the highest enhancement possible, indicating a rather substantial versus a moderate or small collection of 600 or more images.[6] Evaluating the size of a defendant's collection is encouraged by the Commission's 2012 report. ECF No. 49 at PageID #: 251, point one. Even without the Commission's urging, it is commonsensical that a defendant with a larger collection should be subject to a more severe sentence. The flexibility of this enhancement is evidence that this enhancement is not one size fits all. Rather, the enhancement is driven by the severity of the offense conduct. In Defendant's case, the enhancement for number of images was, like the others, contemplatively imposed after being adjusted to fit Defendant's offense conduct. Defendant's objection is overruled.

**E.**

Finally, Defendant objected to the presentence investigation report's findings that no factors warranted a downward departure or variance. Defendant claimed his age, diminished capacity or mental or emotional condition justified a departure. As stated on the record, § 5K2.13 prohibits a downward departure for diminished capacity in offenses falling within

---

[6] Each video translates into 75 images. Defendant was charged with 149 videos or 11,175 images plus 40 photographs.

8

(1:14CR0157)

Chapter 110 of Title 18. This prohibition, while advisory, is well taken by the Court and applies to the child pornography related counts against Defendant. Defendant's age and mental or emotional condition serve him no better.

Defendant trained his exploitive eye on the 14 year-old in 2010. And after causing her and her family great agony, he went dormant and resurfaced in 2013 with a vengeance. The point being not so subtly made is that while Defendant started his assault on his victims at the tender age of 21, he resumed it at nearly 23 years of age. Not only was Defendant aging, he was being afforded time to ponder his crimes, halt them, and resume his tirade. Nothing in Defendant's past overrides the examining forensic psychologist's opinion that Defendant does not have a mental illness rendering him unable to comprehend the nature and consequences of the proceedings against him. Also, Defendant was attentive in court, often consulted with his counsel, and allocuted with a clarity not often exhibited in court by a defendant facing severe penalty. Accordingly, the Court finds that no reason offered or observed, individually or in combination with another, justifies a downward departure or variance. Defendant's objections are overruled.

### III. Conclusion

With due consideration given all that is required by federal law, including the factors listed in 18 U.S.C. §3553(a), and the advisory guidelines, Michael J. Kisling is committed to the United States Attorney General to serve a term of incarceration of 240 months as to each of Counts 1, 2, 4, 5 and 6 of the Indictment, and 180 months as to Count 3 of the Indictment, all

(1:14CR0157)

such terms to be served concurrently. Upon his release, he is subject to supervision, with its myriad conditions, for life.

      IT IS SO ORDERED.

| | |
|---|---|
| August 25, 2015 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson<br>United States District Judge |